# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| PROSPERITY TAX ADV, LLC D/B/A PROSPERITY TAX ADVISORS,<br><br>    Plaintiff,<br><br>    v.<br><br>STEPHANIE VORWIG,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiff Prosperity Tax Adv, LLC, d/b/a Prosperity Tax Advisors ("PTA"), by and through the undersigned counsel, brings this Complaint against Defendant Stephanie Vorwig ("Vorwig" or "Defendant"), and alleges as follows:

## NATURE OF THE CASE

1.  This action concerns the audacious and ongoing theft of PTA's confidential information by PTA's former consultant Defendant Stephanie Vorwig.

2.  Plaintiff Prosperity Tax Advisors provides tax planning and wealth building services to high net worth individuals and businesses. PTA is in a highly competitive field in which every client drives material revenue. PTA spends enormous marketing sums to discover clients and to maintain client relationships over time, and closely guards its client list and information about its clients and the services they pay for.

3.　　Vorwig was formerly PTA's Vice President of Client Account Services, an independent contractor position that gave her access to the confidential information of PTA's clients. Vorwig's employment was contingent upon a Consulting Agreement that prohibited Vorwig from misusing any company Confidential Information, "for any purpose whatsoever other than as necessary for the performance of the Services on behalf of the Company" and required Vorwig to "immediately deliver to the Company . . . all . . . Confidential Information" upon termination of the Agreement or at PTA's request. Ex. A. "Confidential Information" is defined to include information about customers "with whom [Vorwig] became acquainted during the term of this Agreement."

4.　　On October 22, 2025, minutes after putting in her two weeks' notice at PTA, Vorwig used PTA's confidential client contact list to email twelve of PTA's clients, encouraging them to leave PTA and work with her at her new venture and suggesting that if the clients did not leave, it would take PTA "time" to find someone else to service their accounts. Through that email and other subsequent efforts, Vorwig has convinced more than a dozen clients to leave PTA. Vorwig "became acquainted" with every one of these clients solely through her work at PTA. Despite repeated requests from PTA, Vorwig refuses to stop going after these clients, claiming them as "my own clients." Ex. B.

5.　　Also despite repeated requests from PTA, Vorwig refuses to return any client data to PTA, including for clients that are still with PTA. This refusal is actively impeding PTA's ability to service its clients, causing daily and increasing

2

harm to PTA's reputation, and causing clients to threaten to leave due to the disrupted service. Vorwig claims she has deleted data (but will not specify which data she deleted and which data she kept), and through counsel, has refused to allow an independent third party to image her computers containing client data.

6. The foregoing actions have harmed PTA financially and continue to cause ongoing harm to PTA's goodwill, customer relationships, and future business prospects. Accordingly, PTA files this lawsuit, which will be accompanied by a motion for a temporary restraining order and preliminary injunction, to prevent Vorwig from wrongfully leveraging PTA's confidential client list and other information to further her own business interests at PTA's expense, to force Vorwig to return PTA's confidential information to PTA, and for damages for the harm already incurred.

## PARTIES

7. Plaintiff PTA is a Florida corporation with its principal place of business at 3410 Henderson Blvd, Suite 200, Tampa, Florida 33609. PTA provides advanced tax planning, client accounting services, and fractional CFO services to high-net-worth individuals and businesses nationwide. PTA owns all of the trade secrets and intellectual property misappropriated and misused by Defendant.

8. Defendant Stephanie Vorwig is a U.S. citizen and resident of Saint Petersburg, Florida.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Vorwig pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because she is a resident of and conducts business in Florida and is therefore subject to the jurisdiction of a court of general jurisdiction of the State of Florida. In addition, Vorwig engaged in the conduct giving rise to this Complaint in Florida, and has sufficient minimum contacts to render the exercise by Florida courts permissible under traditional notions of fair play and substantial justice. Additionally, Vorwig "expressly consent[ed] to the personal and exclusive jurisdiction and venue of the state and federal courts located in Florida" for any lawsuit relating to her Consulting Agreement.

10. This Court has subject matter jurisdiction as a federal question under 18 U.S.C. § 1030, 18 U.S.C. § 1836(c), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367 because they are part of the same case or controversy.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Vorwig resides in this judicial district and a substantial portion of the events or omissions giving rise to PTA's claims occurred in this District. Moreover, Vorwig "expressly consent[ed] to the personal and exclusive jurisdiction and venue of the state and federal courts located in Florida" for any lawsuit relating to her Consulting Agreement.

**FACTUAL BACKGROUND**

**I.  PTA'S BUSINESS, CONFIDENTIAL, AND TRADE SECRET INFORMATION**

12.     Prosperity Tax Advisors is a professional services firm specializing in sophisticated tax planning, recurring client accounting services ("CAS"), and fractional CFO advisory to high-income business owners, entrepreneurs, and professionals.  PTA's CAS division provides recurring bookkeeping, financial reporting, document onboarding, and strategic financial guidance to clients who pay substantial monthly fees for these services.

13.     PTA's client relationships are the lifeblood of its business and PTA's client list, which Vorwig misappropriated, is one of PTA's most valuable trade secret assets.  PTA's clients, and the fact that they are willing to pay for PTA's specialized services are not publicly known.  PTA spends more than $100,000 annually on marketing to attract clients.  PTA invests further time and resources, client development efforts and relationship building, to acquire and maintain its client base.  PTA hones each client's specific service needs over the course of the client relationship.  PTA does not publicly disclose its client information externally. PTA does not share its client list publicly, and requires its employees and contractors to enter into confidentiality agreements that prohibit the disclosure or misuse of PTA's client list or any other PTA confidential information.

14.     PTA's confidential information includes: non-public client lists and direct contact information; client accounting ledgers and reconciliations; historical financials; client onboarding packages; pricing structures; internal processes and

5

workflow templates; and client specific notes and deliverables—all of which have independent economic value because if disclosed to competitors, those competitors would be able to identify and solicit revenue-generating clients, harming PTA.

15. PTA implements layered security safeguards to protect its confidential information, including: requiring employees and contractors to sign confidentiality agreements; restricting access on a need-to-know basis; maintaining password-protected systems; and using a centralized management server to enable remote device locking and data wiping on company-issued devices.

## II. VORWIG'S ROLE AT PTA AND ACCESS TO CONFIDENTIAL INFORMATION

16. In October 2023, PTA retained Stephanie Vorwig to lead the CAS division. PTA assigned high-value client accounts to Vorwig and, as Vice President of Client Accounting Services, PTA entrusted Vorwig to manage the entire CAS operation, including client onboarding, financial reporting, strategy, and client relationships. In that senior role, PTA gave her access to confidential client financial records, pricing information, and PTA's client list.

17. On August 25, 2025, PTA and Vorwig executed a Consulting Agreement formalizing her continued leadership duties, compensation, and obligations. The Consulting Agreement included language that expressly applied all of these obligations retroactively. Consulting Agreement § 2.

18.  The Consulting Agreement defines "Confidential Information" to include information about PTA clients "on whom Consultant called or with whom Consultant became acquainted during the term of this Agreement":

> "Confidential Information" means any information (including any and all combinations of individual items of information) that relates to the actual or anticipated business and/or products, research or development of the Company, its affiliates or subsidiaries, or to the Company's, its affiliates' or subsidiaries' technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding the Company's, its affiliates' or subsidiaries' products or services and markets therefor, ***customer lists and customers (including, but not limited to, customers of the Company on whom Consultant called or with whom Consultant became acquainted during the term of this Agreement***) ….

Consulting Agreement § 3.A (emphasis added).

19.  The Consulting Agreement prohibits Vorwig from using Confidential Information except on PTA's behalf:

> During and after the term of this Agreement, Consultant will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Confidential Information, and Consultant will not (i) use the Confidential Information for any purpose whatsoever other than as necessary for the performance of the Services on behalf of the Company ….

Consulting Agreement § 3.B.

20.  The restrictions against improper use of Confidential Information last "in perpetuity."  Consulting Agreement § 3.B.

21.  The Consulting Agreement also requires the immediate return of PTA's Confidential Information upon termination or at PTA's request:

> Upon the termination of this Agreement, or upon Company's earlier request, Consultant will immediately deliver to the Company, securely

7

dispose or, or securely destroy, and will not keep in Consultant's possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information, tangible embodiments of the Inventions, all devices and equipment belonging to the Company, all electronically-stored information and passwords to access such property, those records maintained pursuant to Section 4.D and any reproductions of any of the foregoing items that Consultant may have in Consultant's possession or control.

Consulting Agreement § 3.B.

### III. VORWIG'S DEPARTURE AND MISUSE OF PTA CONFIDENTIAL INFORMATION

22. Vorwig put in her two weeks' notice to PTA at 9:04 PM on October 22, 2025. PTA accepted her resignation and was prepared to assign someone else to service the clients Vorwig had been working with.

23. But Vorwig planned to start her own competing firm. To seed her new business, Vorwig took and used PTA's confidential client list to recruit clients in clear violation of her obligations to PTA pursuant to the Consulting Agreement.

24. At 9:26 P.M. on October 22, using her corporate email address but without any notice to or authorization from PTA, Vorwig sent an email to twelve PTA clients. The email said: "To my esteemed clients . . . I have decided to part ways with Prosperity Tax Advisors and build my Financial Accounting practice where I thrive the best. If you would like to keep my team doing your bookkeeping/fractional CFO work, please let me know by emailing me at [Vorwig's personal Gmail address]. If not, please give PTA time to find someone that can do this for you. Thank you." Vorwig copied her own personal email address on the email as well.

25. The response has been devastating: ten of the twelve email recipients moved to work with Vorwig.

26. PTA learned of Vorwig's email the next day and terminated Vorwig for the violation of company policy and her Consulting Agreement. Although PTA has a record of the October 22 email because Vorwig sent it from her corporate account, PTA currently has no access to records of other outreach efforts that Vorwig has made to individuals and businesses on PTA's customer list. However, an additional six clients that were not included on Vorwig's email have ceased their relationship with PTA and are working with Vorwig instead. Thus, on information and belief, Vorwig also contacted these clients, using contact and other information that she learned only through her work at PTA.

27. Vorwig became acquainted with these clients solely through her work at PTA. She would not have known their identities, their specific service needs, their willingness to pay for specialized services, and certainly would not have had their contact information but for her work at PTA.

28. In short, Vorwig stole and used PTA confidential client information data to start a business directly competitive with PTA. This conduct violates Vorwig's Consulting Agreement, which prohibits her from using PTA's confidential information to compete against PTA. Vorwig sent the October 22 email to a "customer list." Consulting Agreement § 3.A. Vorwig knew of these customers, knew that they were willing to pay for professional financial services, knew that these clients generated significant recurring revenue, and possessed the

information necessary to provide those services only because she "became acquainted" with those customers and that information "during the term of" her Consulting Agreement. Consulting Agreement § 3.A.

29. The harm has been severe. Based on historical performance of the clients at issue, the stolen accounts would have been expected to generate at least $200,000 in revenue for PTA over the next twelve months. Moreover, these types of customers tend to stay with their same financial advisors for years.

30. Further, the loss of goodwill, and the loss of future referrals that may have arisen from these clients is immeasurable.

## IV. VORWIG'S ACTIONS ARE DISRUPTING PTA'S EXISTING ACCOUNTS

31. Vorwig's misconduct is also damaging the goodwill of PTA's business. In addition to the lost goodwill associated with client loss, Vorwig is impeding PTA's ability to effectively serve its remaining clients by refusing to return PTA Confidential Information, in violation of Section 6 of her Consulting Agreement.

32. On October 23, 2025, upon discovering her mass solicitation sent using her company email account and based on "information indicating that you have scheduled or are attempting to schedule further meetings with PTA clients," PTA instructed Vorwig in writing to return all "materials containing PTA information" within 48 hours. Ex. C. PTA sent similar requests on October 27 and October 31.

33. Vorwig refuses to return any information. Instead, on November 3, Vorwig swore an affidavit confirming her continued use of PTA's confidential

10

information, including information stored on two Dell laptop computers that she used for her PTA work. Ex. B.[1] The computers contain confidential client records, including records PTA needs to service active accounts. Vorwig does not deny this; rather, she admits that she deleted some information but continues to possess other client information. She claims she is entitled to keep and use this client information because it "originated with or belongs to my own clients." Ex. B. By "my own clients," Vorwig refers only to clients with whom Vorwig "became acquainted" with during her time at PTA. Ex. A.

34. The information that Vorwig refuses to return (or, worse, has already deleted) includes information that PTA needs to service its own clients. As a result of Vorwig's refusal to return this data, at least five PTA clients who previously worked with Vorwig have complained that PTA is behind on its work, further eroding PTA's goodwill and threatening further client loss. These clients include (initials used to preserve confidentiality): H.H., Y. M., R.M., J.N., I.L., and K.C.

35. Through counsel, PTA has engaged in lengthy good-faith efforts to secure the return of PTA's confidential client information and prevent its further misuse, but to no avail.

---

[1] Vorwig returned a laptop used by a bookkeeper in Texas, and also returned an iPad that PTA had purchased.

## FIRST CLAIM FOR RELIEF
### Breach of Contract–Consulting Agreement

36. PTA incorporates paragraphs 1 through 35 as though fully set forth herein.

37. As alleged above, PTA and Vorwig entered into the Consulting Agreement. The terms of the Consulting Agreement were sufficiently clear such that the parties understood what each of them was required to do.

38. PTA has performed all promises, obligations, and conditions imposed on it under Consulting Agreements, except those excused by law or otherwise.

39. In material breach of her contractual obligations under the Consulting Agreement, Vorwig, (i) misappropriated confidential and trade secret information; (ii) retained data taken during the course of her employment reflecting confidential PTA business information; and (iii) used PTA confidential data in violation of her contractual requirement not "use the Confidential Information for any purpose whatsoever other than as necessary for the performance of the Services on behalf of the Company . . . ." Consulting Agreement § 3.B.

40. In material breach of Section 6 of the Consulting Agreement, Vorwig failed to "immediately deliver to [PTA], securely dispose or, or securely destroy," and failed to "not keep in Consultant's possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information."

41. As a direct and proximate result of these breaches, PTA has suffered substantial damages in an amount to be determined at trial.

42. Vorwig's breach of the Consulting Agreement has caused, and will cause, irreparable harm to PTA for which damages would not be an appropriate remedy. Therefore, PTA should be granted injunctive relief in addition to any other remedies and without any requirement to post bond.

## SECOND CLAIM FOR RELIEF
### Misappropriation of Trade Secrets,
### Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

43. PTA incorporates paragraphs 1 through 35 as though fully set forth herein.

44. As set forth above, Vorwig improperly acquired, retained, and/or used confidential and proprietary information of PTA constituting trade secrets as defined by 18 U.S.C. § 1839(3), including, without limitation, a non-public CAS client roster and client-specific accounting ledger, checklists, and workflow notes on devices in Vorwig's possession.

45. PTA's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons in the field. They are also the product of years of research and development at substantial cost to PTA.

46. PTA has undertaken reasonable efforts to maintain the secrecy of the trade secrets at issue. Those efforts include, but are not limited to: confidentiality agreements, restrictions on access to only those necessary, password-protected systems, and a remote lock or wipe ability through a central management platform.

47. These trade secrets directly relate to services used in interstate commerce: PTA services clients using interstate communications and accounting platforms.

48. While employed by PTA, Vorwig obtained access to PTA's confidential trade secret information including customer contact, financial, and account information.

49. Upon resignation from PTA, Vorwig secured and retained PTA's confidential customer information by improper means and in breach of her contractual and legal duties sufficient to constitute misappropriation under 18 U.S.C. § 1836 *et seq*.

50. Vorwig's improper acquisition and use of PTA's trade secrets, actual or threatened, violates the Defend Trade Secrets Act.

51. As a direct and proximate result of Vorwig's conduct, PTA has been injured, and will continue to suffer injury, in an amount that will be proven at trial. PTA has incurred, and will continue to incur, damages, costs, and expenses as a result of Vorwig's misappropriation.

52. As described herein, Vorwig's conduct has been willful and malicious, justifying an award of punitive damages and its reasonable attorney fees under 18 U.S.C. § 1836(b)(3).

53. As a direct and proximate result of Vorwig's wrongful conduct, PTA has been irreparably harmed.

**THIRD CLAIM FOR RELIEF**
**Misappropriation of Trade Secrets,**
**Florida Uniform Trade Secret Act, Fla. Stat. § 688.001** *et seq.*

54. PTA incorporates paragraphs 1 through 35 as though fully set forth herein.

55. Florida law prohibits misappropriation of trade secrets, and authorizes legal actions to enjoin actual or threatened misappropriation and to recover damages for the actual loss cause by misappropriation.

56. As set forth above, Vorwig improperly acquired, retained, and/or used confidential and proprietary information of PTA constituting trade secrets as defined by Fla. Stat. § 688.001, including a non-public CAS client roster and client-specific accounting ledger, checklists, and workflow notes on devices in Vorwig's possession.

57. The information that Vorwig misappropriated derives independent economic value to PTA from the fact that it is not generally known to the public or to PTA's competitors who could obtain economic value from its disclosure or use. The information is also subject to reasonable efforts by PTA to maintain its secrecy, including contractual obligations and electronic security protections.

58. As a direct and proximate result of Vorwig's misappropriation of PTA's trade secrets, PTA has suffered and will continue to suffer significant damages in an amount to be determined at trial.

59. As a direct and proximate result of Vorwig's wrongful conduct, PTA has been irreparably harmed and is entitled to a permanent injunction.

15

60. Conduct in violation of the Florida Uniform Trade Secrets Act ("FUTSA") may be enjoined under Fla. Stat. § 688.003.

61. Because of the willful nature of the violation, PTA is also entitled to punitive damages as allowed Fla. Stat. § 688.004(2).

62. In the alternative, if PTA's Confidential Information does not constitute trade secrets within the meaning of the FUTSA (and it does), Vorwig is nonetheless liable for the wrongful conversion of such materials.

### FOURTH CLAIM FOR RELIEF
### Tortious Interference with Business Relations

63. PTA incorporates paragraphs 1 through 35 as though fully set forth herein.

64. PTA maintains ongoing contractual and business relationships with its clients, who generate recurring monthly revenue for PTA.

65. Vorwig knew of these specific relationships and their revenue potential though her role at PTA and her access to client information.

66. Vorwig knowingly and intentionally interfered with these client relationships by using PTA's non-public client information to solicit PTA's active clients to leave PTA and move their business to her competing enterprise.

67. At all times material hereto, Vorwig was aware that the foregoing actions were in direct violation of the Consulting Agreement.

68. As a direct and proximate result of the foregoing, PTA has suffered and will continue to suffer, great injury and loss, including the termination of engagement from multiple clients, all to the direct gain of Vorwig.

16

69. As a direct and proximate cause of Vorwig's wrongdoing, PTA is suffering immediate and irreparable harm.

## FIFTH CLAIM FOR RELIEF
**Violation of Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

70. PTA incorporates paragraphs 1 through 35 as though fully set forth herein.

71. Vorwig used multiple computers for her work at PTA. These devices were used in interstate commerce and communications and are "protected computers" under 18 U.S.C. § 1030(e)(2)(B).

72. Vorwig agreed to "not keep in Consultant's possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information." Consulting Agreement § 6.

73. In violation of that obligation, Vorwig, knowingly and with intent to defraud, continues to access and use multiple "protected computers" without authorization or exceeding authorized access, specifically by accessing data about PTA's clients despite her written agreement not to do so.

74. PTA suffered "loss," 18 U.S.C. § 1030(e)(11) exceeding $5,000 during a 1-year period, including incident response, client loss, counsel time responding to the incident, and efforts to secure and restore access to client records.

75. As a direct and proximate result of Vorwig's wrongful conduct, PTA has been irreparably harmed and has sustained substantial damage, including financial harm, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PTA prays for judgment against Defendant Stephanie Vorwig as follows:

a. Judgment in PTA's favor and against Vorwig on the causes of action alleged herein;

b. For an award of damages in an amount to be determined at trial;

c. For injunctive relief, including but not limited to a permanent injunction prohibiting Vorwig from accessing, using, disclosing, transmitting, or discussing the contents of any PTA confidential or trade secret information retained after her departure from PTA;

d. Restitution against Vorwig and in favor of PTA, including disgorgement of any wrongfully obtained profits or pecuniary gain;

e. For attorney fees, as are expressly provided by the terms of the Consulting Agreement;

f. For costs of suit;

g. For punitive damages;

h. For pre- and post-judgment interest according to law; and

i. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff PTA respectfully demands a trial of its claims by jury to the extent authorized by law.

# **VERIFICATION**

I, Michael Moffa, an authorized representative of Plaintiff Prosperity Tax Advisors, declare under penalties of perjury that I have read the foregoing and believe the facts alleged therein are true and correct based upon my personal knowledge, information and records available to me, and reasonable investigation performed by Prosperity Tax Advisors.

> */s/ Michael Moffa*
> Michael Moffa
> Founders, Prosperity Tax Advisors

Dated: November 12, 2025

> */s/ Laura Ferguson*
> **QUINN EMANUEL URQUHART & SULLIVAN LLP**
>
> Jeffrey W. Nardinelli (*pro hac vice* forthcoming)
> 50 California Street, 22nd Floor
> San Francisco, CA 94111
> Telephone:  (415) 875 6600
> Facsimile:   (415) 875-6700
> jeffnardinelli@quinnemanuel.com
>
> Laura N. Ferguson (FL Bar 1047701)
> 2601 South Bayshore Drive, 15th Floor
> Miami, Florida 33133
> Telephone: (305) 402-4880
> Facsimile: (305) 901-2975
> lauraferguson@quinnemanuel.com