**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PROSPERITY TAX ADV, LLC
d/b/a PROSPERITY TAX ADVISORS,

    Plaintiff,

v.                                                    Case No. 8:25-cv-3112-TPB-NHA

STEPHANIE VORWIG,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DEFERRING IN PART**
**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff's "Motion for a Temporary Restraining Order and Preliminary Injunction with Supporting Memorandum of Law," filed on November 12, 2025. (Doc. 3). After reviewing the motion, court file, and the record, the Court finds as follows:

**Background**

According to the allegations of the verified complaint, Plaintiff Prosperity Tax Adv LLC d/b/a Prosperity Tax Advisors provides tax and financial services to high-net-worth individuals and businesses. Plaintiff alleges that its client lists, client financial information, and other confidential business information constitute valuable non-public information that Plaintiff protects by various methods, including disclosing the information only on a need-to-know basis and requiring employees and contractors to enter confidentiality agreements.

Defendant Stephanie Vorwig worked for Plaintiff as an independent contractor with the title "Vice President of Client Account Services" beginning in October 2023. In that role, her responsibilities included onboarding clients, financial reporting, strategy, and client relationships, and she obtained access to customer lists and confidential client information.

On August 25, 2025, Plaintiff and Vorwig executed a consulting agreement (the "Agreement") that provided for Vorwig's ongoing services and compensation. The Agreement also provided that Vorwig would not disclose "Confidential Information" as defined in the Agreement without Plaintiff's permission unless required to perform services under the Agreement nor use such confidential information other than to perform services on behalf of Plaintiff. The Agreement further required Vorwig to return, destroy, or delete confidential information upon termination of the Agreement.

The Agreement broadly defined "Confidential Information" as any information "that relates to," among other things, Plaintiff's "actual or anticipated business and/or products," to Plaintiff's "services products or services or markets therefor," and to "customer lists and customers (including, but not limited to, customers of the [Plaintiff] on whom [Vorwig] called or with whom [Vorwig] became acquainted during the term of this Agreement)[.]" Although the Agreement was executed on August 25, 2025, it provided that the confidentiality provisions would apply retroactively to information Vorwig obtained while performing services for

Plaintiff to the extent the information would have constituted "Confidential Information" if obtained during the term of the Agreement.

Plaintiff alleges that on October 22, 2025, Vorwig gave two weeks' notice of her desire to terminate her employment and then, minutes later used her corporate e-mail to contact twelve of Plaintiff's clients. In her email, she told the clients that she was leaving Plaintiff's employment, stated that "[i]f you would like to keep my team doing your bookkeeping/fractional CFO work, please let me know," and provided her personal e-mail address. Vorwig also stated in the e-mail that if the clients chose not to follow her, "please give [Plaintiff] time to find someone that can do this for you," thereby suggesting that failing to follow Vorwig might lead to a disruption of service for these clients. Ten of the twelve solicited clients left Plaintiff to work with Vorwig. The next day, Plaintiff learned of Vorwig's e-mail, terminated Vorwig's employment, and terminated the Agreement. Another six clients not included on Vorwig's e-mail left Plaintiff to work with Vorwig, which Plaintiff alleges on information and belief resulted from further solicitation efforts by Vorwig.

It is further alleged that Vorwig took with her electronic devices containing Plaintiff's confidential information. These items included two personal laptops which Vorwig purchased and used in her work, a third laptop, and an iPad. Vorwig has returned the latter two items but retains the two laptops. She has stated in an affidavit she provided to Plaintiff that:

> To the best of my knowledge and belief, I have deleted or securely removed any non-public PTA [i.e., Plaintiff] information or client data

> from my personally owned devices, except for information that (i) is publicly available, (ii) originated with or belongs to my own clients, or (iii) is necessary to maintain required business, accounting, or legal records in compliance with applicable professional standards and law.

Plaintiff contends, however, that the reference to information that "originated with or belongs to [her] own clients," in fact refers to information relating to clients with whom Vorwig became acquainted while performing services on Plaintiff's behalf and therefore constitutes information covered by the confidentiality provisions of the Agreement. Plaintiff alleges that the information Vorwig retains includes information Plaintiff requires to service remaining clients who formerly worked with Vorwig, which has resulted in complaints about service from these clients, threatening the loss of even more business. Plaintiff identifies these clients by their initials as H.H., Y.M., R.M., J.N., I.L., and K.C.

Plaintiff filed suit against Vorwig on November 12, 2025, asserting claims for breach of the Agreement, trade secret misappropriation under the federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act, tortious interference, and violation of the federal Computer Fraud and Abuse Act. On the same day, Plaintiff filed the instant motion seeking a temporary restraining order and permanent injunction enjoining Vorwig from retaining possession of Plaintiff's confidential information, from destroying or records or documents, including digital information, and for other, related relief.

## Legal Standard

A district court is authorized to issue a temporary restraining order without notice to the adverse party only in limited emergency circumstances. *See* Fed. R.

Civ. P. 65(b).  Under Rule 65(b)(1), a federal court may only issue a temporary restraining order without first giving notice to the enjoined parties if the movant provides:

> (A) specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).  If the movant establishes that it is justified in seeking *ex parte* relief, it next bears the burden to establish that injunctive relief is appropriate by showing: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005)

## Analysis

The Court finds that issuing this Order without notice pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure is appropriate because Plaintiff has presented specific facts in the complaint showing that immediate and irreparable injury, loss, or damage will result to Plaintiff before the adverse party can be heard in opposition.  In the absence of an *ex parte* order, Vorwig will likely continue to possess, misuse, and misappropriate Plaintiff's confidential information, including customer information, posing an imminent risk of irreparable harm to Plaintiff.  In particular, Plaintiff has shown the need for immediate relief in at least three

respects: (1) to prevent any ongoing efforts by Vorwig to solicit Plaintiff's customers using confidential information, threatening irreparable loss of customers and goodwill, (2) to prevent further deletions or other loss of information needed by Plaintiff for its ongoing business activities, and (3) to require Vorwig to return to Plaintiff information needed for Plaintiff's business.

Plaintiff has also demonstrated the requirements for temporary injunctive relief. Plaintiff has shown a strong probability of success on the merits. Here, Plaintiff has sufficiently alleged that Vorwig breached the Agreement between the parties by her unauthorized use of confidential information to solicit customers and has continued to possess confidential information on electronic devices after the termination of her Agreement.

Second, Plaintiff has established that a threat of immediate and irreparable harm will occur unless Vorwig is enjoined, including the potential loss of valuable information, the loss of customers and goodwill from continued solicitation by Vorwig using Plaintiff's confidential information, and a potential loss of customers due to service issues created by Plaintiff's inability to obtain needed information in Vorwig's possession.

Any potential harm to Vorwig from restraining her use of Plaintiff's trade secrets and confidential information is outweighed by the potential harm to Plaintiff if relief is not issued. Restraining Vorwig from violating the Agreement's confidentiality provisions would not harm Vorwig because she freely entered into and agreed to be bound by the Agreement. *See Medi-Weightloss Franchising USA,*

*LLC v. Sadek*, No. 8:09-cv-2421-T-24MAP, 2010 WL 1837767, at *7 (M.D. Fla. Mar. 11, 2010). And the public interest considerations weigh largely in favor of granting the temporary restraining order by promoting the protection of confidential information and trade secrets such as client lists and enforcing valid contracts between parties.

Consequently, the Court finds that good cause exists to grant Plaintiff's motion for a temporary restraining order. Whether a bond should be posted and the amount of security is a matter within the discretion of the trial court. *See Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997). The Court believes that Plaintiff should be required to post a bond of $100,000.00 as security. *See* Fed. R. Civ. P. 65(c).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Plaintiff's "Motion for a Temporary Restraining Order and Preliminary Injunction with Supporting Memorandum of Law" (Doc. 3) is hereby **GRANTED** to the extent that Plaintiff seeks a temporary restraining order.

(2)   Defendant Stephanie Vorwig is hereby:

   a.   **ENJOINED** from retaining possession of Plaintiff's Confidential/Proprietary information and records, including customer information and records relating to customers with whom Vorwig became acquainted during the term of her Consulting Agreement with Plaintiff;

b. **ENJOINED** from destroying, erasing, or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer or electronic media or cloud storage) in Vorwig's possession or control that were obtained from Plaintiff or contain Plaintiff's Confidential/Proprietary information;

c. **ENJOINED** from using, to further her own business interests, any confidential client information relating to clients with whom Vorwig became acquainted during the term of her Consulting Agreement with Plaintiff;

d. **ORDERED** to provide to Plaintiff's counsel within three business days a list of every customer of Plaintiff' that Vorwig contacted on or after October 22, 2025, and how that customer was contacted; and

e. **ORDERED** to deliver to Plaintiff's counsel within three business days all Plaintiff's confidential information obtained during the term of Vorwig's work for Plaintiff, including all confidential client information relating to clients with whom Vorwig became acquainted during the term of her Consulting Agreement with Plaintiff, including information related to Plaintiff's current clients H.H., Y. M., R.M.., J.N., I.L., and K.C.

(3)  The restrictions set forth herein shall apply to Vorwig and all persons and entities acting in concert or participation with Vorwig.

(4)     Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of $100,000.00 on or before November 18, 2025, as security for payment of damages to which Vorwig may be entitled for a wrongful injunction or restraint.

(5)     Immediately upon the entry of the temporary restraining order, Plaintiff is directed to serve on Vorwig a copy of the summons, the complaint, Plaintiff's "Motion for a Temporary Restraining Order and Preliminary Injunction with Supporting Memorandum of Law," a copy of any affidavit and other paper submitted in support of the motion, and a copy of this Order. *See* Local Rules 6.01; 6.02.

(6)     Plaintiff is directed to file proof of service promptly after service is effected.

(7)     Vorwig is directed to file her response to Plaintiff's motion within seven days after service of the above-referenced documents.

(8)     This Order shall remain in effect for two weeks from the date of entry of this Order and expires on November 28, 2025, or until such further dates as set by the Court or stipulated to by the parties.

(9)     The Court **DEFERS IN PART** Plaintiff's motion to the extent it seeks a preliminary injunction. A hearing on Plaintiff's motion to the extent it

seeks a preliminary injunction is set for December 4, 2025, at 10:00 a.m.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 14th day of November, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE